[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1111 
This is a wrongful death action initiated by Terri J. Murray as administratrix of the estate of her husband, Daniel Curtis Murray. Plaintiff averred that the defendant, Alabama Power Company, negligently or wantonly failed to warn plaintiff's decedent of the imminent and inherent dangers associated with high power electrical transmission lines that ran adjacent to plaintiff's house and that this failure was the proximate cause of the death of plaintiff's husband. After a trial by jury, a verdict was returned in favor of the defendant. Plaintiff appeals this decision and we affirm.
On March 31, 1976, appellant's decedent, Daniel Curtis Murray, and two of his friends, James Porter and Roger May, were erecting a CB radio antenna at Murray's house in Tuscaloosa County. The antenna was approximately fifty-three feet in height. It is disputed as to whether the men had completed the erection of the antenna when it fell. Around 9:30 p.m., however, the antenna fell and came into contact with high power electrical transmission lines which were adjacent to Murray's property line. All three men were killed.
The transmission lines, owned and maintained by Alabama Power Company, were uninsulated and carried a current of 115,000 volts. The lines were located inside a 100 foot right of way, the view from the ground to the line was clear and unobstructed, and the lines were open and obvious. The antenna was burned where it contacted the lines, forty-three feet, four inches, from the base of the antenna. It is disputed as to whether Alabama Power Company had knowledge that area residents were erecting antennas adjacent to the transmission lines.
As stated above, at trial the jury returned a verdict in favor of Alabama Power Company. On appeal, the primary issue presented by the appellant is whether the trial court committed reversible error by allowing Alabama Power Company to introduce into evidence Tuscaloosa City Ordinance No. 1437 as evidence of contributory negligence. This ordinance provides in pertinent part:
 "It shall be unlawful for any person to install, erect, or maintain, or for any person to permit to be installed, erected or maintained, on any property or premises under his charge or control, any radio or television antenna at any point unless the distance from the base of said antenna in a direct line to the nearest primary electrical distribution or transmission line or conductor carrying a potential of 600 volts or more of electricity is at least fifteen feet greater than the distance from the base of said antenna to the tip."
Tuscaloosa City Ordinance No. 1437.
At the conclusion of the trial, the trial judge instructed the jury that a violation of *Page 1112 
this ordinance was prima facie negligence. The pertinent portions of that charge are as follows:
 "The duty of the plaintiff's intestate was to use ordinary care for his own safety, to do as a reasonable and prudent person would have done under the same or similar circumstances, or to refrain from doing what a reasonable and prudent person would have refrained from doing under the same or similar circumstances.
 "Municipal ordinances extend to the police jurisdiction of a city. The police jurisdiction of the city is a three-mile extension of the corporate limits. The violation of certain state statutes or city ordinances is what is known as prima facie negligence. Prima facie negligence means that it is presumed to be negligence, but it is not under all circumstances, and it is a jury question whether such negligence — I am sorry, it is a jury question whether such a violation is negligence.
 "Ordinance No. 1437 of the City of Tuscaloosa has been admitted into evidence. I am going to read you the pertinent parts of that ordinance. The fact that I read it to you is no indication that it has been violated or that any violation was the proximately contributing cause of any injury. You must determine whether or not such is negligence, whether or not such violation proximately contributed to the injury complained of, depending on what you find the facts to be.
 "If you determine that the plaintiff's intestate violated this ordinance and that such violation was negligence and that such negligence proximately contributed to his death, then the plaintiff would not be entitled to recovery. The pertinent parts of that ordinance read as follows: `It shall be unlawful for any person to install, erect or maintain or for any person to permit to be installed, erected or maintained on any property or premises under his charge or control, any radio or television antenna at any point unless the distance from the base of said antenna in a direct line to the nearest primary electrical distribution or transmission line or conductor carrying a potential of 600 volts or more electricity is at least fifteen feet greater than the distance from the base of said antenna to the tip thereof when fully extended.'"
On appeal, the appellant states that it is a general rule of law that a statute is applicable in the negligence context only where it is determined as a matter of law that the statute in question was enacted to protect the class of persons in which the party asserting the statute belongs from the risk of danger actually created by the violation. Appellant further contends that only where the statute was enacted for the benefit of the party seeking to assert its violation may that party assert that the violation constituted contributory negligence per se.
Appellant states that in this case, the instructions of the trial court, while referring to the violation of Ordinance 1437 as "prima facie negligence," coupled with the closing arguments of the defendant, were misleading and tended to indicate to the jury that a violation of the ordinance would be a complete defense for the defendant. These contentions, however, are without merit.
The trial court charged the jury that they were to make the determination of (1) whether the ordinance was violated, (2) whether that violation would constitute negligence, and (3) whether that negligence proximately caused the death of Daniel Murray. It is quite apparent that the trial court's charge didnot invade the province of the jury.
The trial court stated that the violation of certain ordinances or statutes constituted prima facie negligence.Prima facie negligence is only evidence to support a jury finding that a party was guilty of negligence that was, in turn, the proximate cause of his injuries. A prima facie case of negligence must be submitted to the jury only as evidence of that negligence and it is not decided against the party as a matter of law. Here, had the charge been on negligence per se, the jury would have been *Page 1113 
instructed to determine whether, as a matter of fact, the ordinance had been violated and whether that violation was the proximate cause of the injury. As stated above, the ordinance was submitted only as prima facie evidence of negligence, not as negligence per se.
The appellant contends that the trial court's charge was misleading, yet it is the law in Alabama that an oral charge must be considered as a whole, and if the entire charge states the law correctly, then no reversible error has been committed even though when considered alone a single part of the charge might be considered erroneous. Salotti v. Seaboard Coast LineRailroad Co., 293 Ala. 1, 299 So.2d 695 (1974); MetzgerBrothers, Inc. v. Friedman, 288 Ala. 386, 261 So.2d 398 (1971). As stated, the trial court specifically instructed the members of the jury that they were to determine (1) if the ordinance had been violated, (2) whether any violation would constitute negligence, and (3) whether that negligence would be the proximate cause of decedent's death. There was absolutely nothing in the charge that has been shown to injure the substantial rights of the appellant. At no time did the trial court either directly or indirectly instruct the jury that Ordinance No. 1437 had been violated. In fact, the learned trial judge specifically stated that "the fact that I read [the ordinance] to you is no indication that it has been violated or that any violation was the proximately contributing cause of any injury." The ordinance was one factor that could be weighed by the jury to determine whether plaintiff's decedent was negligent under the circumstances. When considered as a whole, there was no reversible error in the charge.
The ordinance is a safety ordinance passed by the City of Tuscaloosa, designed to prohibit the very conduct in which Daniel Murray and his two companions were engaged at the time of the accident. The breach of a statute or ordinance by a plaintiff can be asserted by a defendant as evidence of contributory negligence when that statute or ordinance fixes a standard of reasonable care for that plaintiff and/or members of the community. Industrial Tile, Inc. v. Stewart,388 So.2d 171 (Ala. 1980); Knight v. Burns, Kirkley WilliamsConstruction Co., 331 So.2d 651 (Ala. 1976). See also, City ofDothan v. Hardy, 237 Ala. 603, 188 So. 264 (1939). Such use of a statute or ordinance does not automatically label the plaintiff's conduct as negligent. The determination, as in this case, of whether a violation of the statute or ordinance, if any, constitutes negligent conduct is left solely to the jury.
In Scott v. Schlosser, 401 So.2d 41 (Ala. 1981), this Court held that the trial court was justified by the evidence, in connection with the defense of contributory negligence, in reading statutes to the jury regarding rules of the road. The focus was upon whether there was error by charging the jury that a violation of the laws was negligence per se, and then cautioning the jury that the reading of the statutes was "no indication that they had been violated or that such violation, if any violation there be, proximately caused or proximately contributed to the injuries complained of by the Plaintiffs." In affirming the trial court, this Court concluded that such charges to the jury were not error. The present case, in turn, deals with an ordinance and a jury instruction which asserted that its violation, if any, was prima facie negligence. Thus, Murray's violation of the ordinance was a proper factor to be considered by the jury in determining whether his conduct was negligent.
 "A plaintiff's violation of a statute cannot bar his recovery if the statute was enacted for a purpose wholly different from that of preventing the harm complained of, or from that of protecting individuals from the acts prohibited. Thus, where the statute or ordinance which the plaintiff violated had not been enacted for the benefit of the defendant, as a member of the public or otherwise, such violation, instead of being negligence per se, would be only some evidence of negligence if the enactment was deemed sufficiently relevant to be considered, *Page 1114 
and such a violation could not be invoked by the defendant as a defense to plaintiff's claim.
 "A causal violation of a statute puts the offender in the class of those who fail to obey legal rules for conduct, when he seeks to recover for the negligence of another, and there is authority to the effect that even though such violation does not amount to negligence as a matter of law, it may be considered by the jury in passing on the question whether the plaintiff was guilty of contributory negligence. One who has violated a safety statute laying down a rule of conduct cannot be heard to say that he exercised ordinary care, or that he could not have anticipated injury from its violation, unless compliance with the statute was impossible under the circumstances or would have subjected him to other imminent and apparent dangers."
57 Am.Jur.2d Negligence § 315 (1971) (footnotes omitted). We hold that a safety statute or ordinance, such as Ordinance No. 1437, can be considered by a jury as going to the standard of care for the self-protection of the plaintiff. A violation of such statute or ordinance can, therefore, be evidence of negligence under certain circumstances. The decision of whether a violation occurred, whether such violation was negligence, and whether such negligence was the proximate cause of the injuries complained of will, as here, be left entirely to the jury.
The appellant also contends that the trial court erred by refusing to allow her to introduce evidence of prior accidents involving injuries to members of the general public caused by contact with electrical conductors erected, owned, or maintained by Alabama Power Company, to show knowledge by or notice to the defendant that such incidents were occurring. This Court has consistently held, however, that for such evidence to be admissible, the prior accidents must not have been too remote in time, and the conditions and circumstances under which the prior accidents occurred must have been substantially the same as in the subject case. City ofBirmingham v. Levens, 241 Ala. 47, 200 So. 888 (1941); Reed v.L. Hammel Dry Goods Co., 215 Ala. 494, 111 So. 237 (1927);Hertz v. Advertiser Co., 201 Ala. 416, 78 So. 794 (1918). It is within the discretion of the trial court to limit evidence of other accidents or safety history when such evidence will work to divert the attention of the jury to a greater extent than is the probative worth of such evidence. Reed v. L. Hammel DryGoods Co., 215 Ala. 494, 111 So. 237 (1927). Here, there was no showing that the evidence proffered by the appellant came within the required guidelines. Thus, the trial court properly exercised its discretion in refusing to admit any evidence of prior accidents.
Appellant contends that the trial court erred by refusing to allow her to introduce into evidence Alabama Power Company Operating Bulletin 103. This bulletin provides in pertinent part:
 "The purpose of this is to establish widths of rights of-way to be purchased for future transmission lines
and to define practices to be followed in the several phases of right-of-way clearing and line construction operation and maintenance to insure uniformity, satisfactory operation, and good public relations." (Emphasis supplied.)
This bulletin is an internal operating guideline for Alabama Power Company and was promulgated in 1959, eleven years after
the transmission lines in question were constructed. The operating bulletin, by its own terms, was to operate prospectively only. To admit such evidence would undoubtedly cause speculation by the jury and would greatly prejudice Alabama Power Company. We find no error in the trial court's refusal to admit this operating bulletin into evidence.
Finally, the appellant contends that the trial court committed reversible error in allowing Alabama Power Company to make references to the appellant's remarriage. The plaintiff presented a motion in limine to the trial court to prevent the mention of plaintiff's remarriage, stating that it would be prejudicial and irrelevant to the lawsuit. *Page 1115 
This motion was denied. During voir dire examination of the jury, counsel asked the prospective jurors whether any of them were "personally acquainted with Mrs. Barrett's present husband, Mr. Virgil Barrett."
First, at the time this question was put to the jury, the appellant failed to raise any objection. Thus, the trial court was not called upon to make a ruling as to the propriety of the question and no question was preserved for review. Second, plaintiff's counsel, during direct examination of the plaintiff, specifically asked if she had since remarried. It is the law in Alabama that a party cannot introduce evidence in a case and on appeal assert that the trial court committed reversible error by admitting that evidence. Peterson v.Jefferson County, 372 So.2d 839 (Ala. 1979). Since the appellant asked virtually the same question of which she complained, no reversal can be predicated upon the admission of the evidence of her remarriage. Southeast Contractors, Inc., v.H. R. Construction Co., 284 Ala. 712, 228 So.2d 463 (1967).
After a close review of all the issues presented by the appellant, we find no errors made by the trial court. For this reason, the decision of the trial court is due to be affirmed.
AFFIRMED.
FAULKNER, ALMON, EMBRY and ADAMS, JJ., concur.