ADAMS, Justice.
The plaintiffs, Hollis and Florence McA-bee, appeal from a judgment entered on a jury verdict in favor of the defendants, Johnny Steven Richey and the Sherwin-Williams Company. The McAbees allege that negligence and wantonness on the part of the defendants resulted in injuries to Hollis McAbee when his vehicle was hit from behind by Richey, who was driving a Sherwin-Williams Company truck. Florence McAbee’s claim is for loss of consortium.
McAbee, a battalion chief of the Birmingham Fire Department, was hit from behind as he was attempting to make a right turn off First Avenue South into Fire Station No. 12. The alley into which McAbee was attempting to turn was marked with a “DO NOT ENTER” sign. At the time of the collision, McAbee was stopped on First Avenue South, waiting for an automobile to turn out of the alley. McAbee claims that he had his turn signal on; however, Richey asserts that he never saw the signal. McA-bee further contends that he placed the “DO NOT ENTER” sign at the entrance to the alley to discourage public use of the alley and that fire department personnel regularly used the alley as an entrance to the fire station.
The issues raised in this appeal concern certain jury instructions given by the trial judge. Those instructions, set forth below, concerned certain Birmingham ordinances regarding one-way streets:
“Ladies and gentlemen, let’s also now talk about the rules of the road. In this case I’ve been asked to give you certain rules of the road, the rules of the road consist of a number of statutes enacted into law by your state legislature and also by the City of Birmingham. I will now read certain of these rules of the road to you, but the fact that I read these statutes or ordinances to you is no indication that any of these statutes have been violated or that such violation is negligence, or that any such violation proximately caused or proximately contributed to the injuries complained of by *789 the plaintiff. It is for you to decide whether or not the statutes have been violated, and whether or not any such violation proximately caused or proximately contributed to cause the injury or damages complained of by the plaintiff, depending on what you find the facts to be in the case.
“Now, the first one I’m going to read to you is a rule of the road that was enacted into law by your legislature. It is found in [Section] 32-5A-89, the Code of Alabama, and it reads as follows: ‘The driver of a motor vehicle shall not follow another more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.’
“I will now read to you some code provisions from the city codes of the City of Birmingham. I will read Section 10-1-8 first, which is entitled ‘One Way Streets and Alleys.’ ‘On streets, roadways, and alleys designated for one way traffic by the city traffic engineer, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by official traffic control devices.’
“I will now read Section 10-3-5, entitled ‘Public Employees to Obey Traffic Regulations.’ ‘The provisions of this title shall apply to the driver of any vehicle owned by or used in the service of the United States Government, this state, county or city, and it shall be unlawful for any such driver to violate any of the provisions of this title except as otherwise permitted in this title or by state statute.’
“I will now read portions of Section 10-3-6, entitled ‘Authorized Emergency Vehicles.’ ‘The driver of an authorized emergency vehicle, when responding to an emergency call or when in the pursuit of an actual suspected violator of the law or when responding to, but not upon returning from [a] fire alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated. The driver of an authorized emergency vehicle may: Disregard regulations governing direction of movement or turning in specific directions.’
“ ‘The exemptions granted in this section to an authorized emergency vehicle shall apply only when the driver of any such vehicle while in motion sounds an audible signal by bell or siren, as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp which displays a red or blue light visible under normal atmospheric conditions from a distance of 500 feet to the front of the vehicle.’
“I will now read a portion of Section 10-5-2, entitled ‘Authority to Place and Obedience to Turning Returning Markers,’ ‘When authorized markers, buttons or other [indicators] are placed within an intersection indicating the course to be traveled by vehicles turning thereat, no driver of a vehicle shall disobey the directions of the indicators.’
“I will now read a portion of Section 10-5-6, that’s entitled ‘Starting, Stopping and Turning, and Required Signals.’ ‘No person shall turn a vehicle at an intersection unless the vehicle is in proper position on the roadway, or otherwise turn a vehicle from a direct course, or move right or left upon a roadway unless and until the movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by the movement.
“ ‘A signal of intention to turn right or left when required shall be given continuously during more, I mean, not less than the last 100 feet traveled by the vehicle before turning.’ Now that is the end of the statutes that I’m going to read to you.”
The McAbees contend that the giving of these instructions was prejudicial to their case, as well as unwarranted by the evidence, and, therefore, they argue that a new trial should have been granted. We agree.
Prior to giving the instructions, the trial judge charged the jury that it was up to the jury to decide the applicability, if any, *790 of the ordinances. The McAbees, however, contend that this case is not unlike Murray v. Alabama Power Co., 413 So.2d 1109 (Ala.1982), where we wrote:
“[T]he trial court specifically instructed the members of the jury that they were to determine (1) if the ordinance had been violated, (2) whether any violation would constitute negligence, and (3) whether that negligence would be the proximate cause of decedent’s death. There was absolutely nothing in the charge that has been shown to injure the substantial rights of the appellant. At no time did the trial court either directly or indirectly instruct the jury that [the ordinance] had been violated. In fact, the learned trial judge specifically stated that ‘the fact that I read [the ordinance] to you is no indication that it has been violated or that any violation was the proximately contributing cause of any injury.’ The ordinance was one factor that could be weighed by the jury to determine whether plaintiff’s decedent was negligent under the circumstances. When considered as a whole, there was no reversible error in the charge.
“The ordinance is a safety ordinance passed by the City of Tuscaloosa, designed to prohibit the very conduct in which [the decedent] and his two companions were engaged at the time of the accident. The breach of a statute or ordinance by a plaintiff can be asserted by a defendant as evidence of contributory negligence when that statute or ordinance fixes a standard of reasonable care for that plaintiff and/or members of the community. Industrial Tile, Inc. v. Stewart, 388 So.2d 171 (Ala.1980); Knight v. Burns, Kirkley & Williams Construction Co., 331 So.2d 651 (Ala.1976). See also, City of Dothan v. Hardy, 237 Ala. 603, 188 So. 264 (1939). Such use of a statute or ordinance does not automatically label the plaintiff’s conduct as negligent. The determination, as in this case, of whether a violation of the statute or ordinance, if any, constitutes negligent conduct is left solely to the jury.”
Murray, at 1113. (Emphasis original.) The trial judge in this case attempted to leave to the determination of the jury the applicability of the statutes; however, there was no evidence offered by which a jury could conclude that McAbee had violated that portion of § 10-5-2 of the Birmingham City Code relating to “authorized markers ... placed within an intersection indicating the course to be traveled,” nor was there any evidence offered indicating a violation of § 10-1-8, which deals with one-way streets and alleys. McAbee testified that he himself had had the “DO NOT ENTER” sign placed at the entrance to the alley to discourage local traffic from using the alley, thereby eliminating the possibility of blocking access to the fire station. He also indicated that fire department personnel regularly used the alley. Furthermore, at the time of the accident, McAbee had not even negotiated the turn which allegedly would have constituted a violation of the ordinances. In light of these facts, we find that the judge’s instructions were confusing, were not responsive to the evidence, and should not have been given to the jury.
For the foregoing reasons, the judgment in this case is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, STEAGALL and INGRAM, JJ., concur.
MADDOX, ALMON and KENNEDY, JJ., dissent.